GEORGE KARADANIS, ROBERT MALOFF, DBA SUNDOWNER CASINO, APPELLANTS, v. JULIEN SOURWINE, FAHRENKOPF, MORTIMER, SOURWINE, MOUSEL AND SLOAN, L. TIMOTHY TERRY, AND TERRY AND WINTER, RESPONDENTS.

No. 19074

December 6, 1989                    783 P.2d 454

794

[Rehearing denied April 17, 1990]

*Cal Hoover*, Reno; *Herman L. Koelewyn*, Sacramento, California, for Appellants.

*Georgeson, McQuaid, Thompson & Angaran*, Reno; *Rawlings, Olson & Cannon*, Las Vegas, for Respondents.

## OPINION

By the Court, SPRINGER, J.:

This is an attorney malpractice case. The trial court granted summary judgment to the respondent attorneys, ruling that the attorneys could not be held liable for their failure to prosecute in favor of their clients the defense of immunity under the Nevada Industrial Insurance Act (NIIA) because the clients did not, as a matter of law, enjoy such immunity under the facts of this case.

One Larry Newcomb sued Karadanis and Maloff, doing business as Sundowner Casino, for negligence in their capacity as proprietors of the Sundowner Hotel and Casino, where Newcomb was injured. In the Newcomb lawsuit Karadanis, Maloff and their casino partnership, to be called "clients," were represented at varying stages of the litigation by respondent attorneys, to be called "attorneys." After Newcomb won a large money judgment against the clients, the clients sued the attorneys for negligent malpractice based upon the attorneys' failure to prosecute a defense of absolute immunity under the Nevada Industrial Insurance Act (NIIA) on behalf of the clients.

As indicated above, this case turns on whether the NIIA immunity was available to clients and not on whether the attorneys were negligent in failing to assert the defense. We affirm the summary judgment in this case solely on the ground that under the facts of this case Karadanis, Maloff and the Sundowner Casino firm were not, as a matter of law, immune from suit by reason of NIIA immunity.

At the time he was injured, personal injury claimant Newcomb was an employee of Cartwright Drywall, a subcontractor on a construction project involving the Sundowner Hotel. The general

contractor was a partnership called HKM Cal-Neva Construction Company, the partners of which were Karadanis, Maloff and one Jack Powers. Newcomb was covered by the construction firm's industrial insurance, and there is no question but that the construction partnership and its partners, Karadanis, Maloff and Powers, were immune from common law liability. NRS 616.270; NRS 616.560. The only question is whether the immunity of the construction company partnership and its partners carries over in some way to the Sundowner Casino partnership and its partners, who were sued for their negligence as occupiers of the premises where Newcomb was injured.

The clients claim that once immunity attaches to Karadanis and Maloff as partners in the construction firm that immunity also immunizes them as partners in the casino partnership and protects the Sundowner Casino partnership as well. The clients cite Frith v. Harrah South Shore Corp., 92 Nev. 447, 552 P.2d 337 (1976), in which an injured worker attempted to sue Harrahs as an owner of the premises where the injury occurred even though the Harrahs corporation was immune as the statutory employer of the injured worker. We held in *Frith* that Harrahs did not lose its immunity as an employer "just because it was also the owner of the real property where the injury occurred." 92 Nev. at 453, 552 P.2d at 341.

Our rejection of the so-called dual capacity doctrine[1] is of no help to Karadanis, Maloff and the Sundowner Casino partnership in this case because the employer in this case, Cal-Neva, is not acting in a dual capacity. It is acting in only one capacity, that of employer, and in that capacity is immune from suit. The construction company is not acting in the "capacity" of owner, and the *Frith* and *Noland* cases simply have no application to the facts of this case. The owner in this case is an entirely different partnership, respondent Sundowner Casino.

We have a much different situation here from what we had in

---

[1]In refusing to permit Harrahs to be sued in negligence just because it acted as both an employer and an owner, this court rejected what has been called the "dual capacity doctrine." The doctrine was defined and explained in Noland v. Westinghouse Elec. Corp., 97 Nev. 268, 628 P.2d 1123 (1981). The *Noland* opinion quoted this definition of the "dual capacity doctrine":

> [A]n employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.

*Noland,* 97 Nev. at 269, 628 P.2d at 1124 (quoting 2A A. Larson, Workmen's Compensation, sec. 72.80 at 14-112 (1976)).

*Frith* and *Noland.* Here we have two different and distinct *firms*[2] engaged in two entirely different kinds of business enterprise. The Sundowner Casino, the firm that owns the hotel-casino, is not the employer of Newcomb and does not have a contract of hire with Newcomb. Sundowner can gain immunity against Newcomb only if the immunity of the construction firm, Cal-Neva, can in some way be said to give immunity to the casino firm, thus investing the casino firm, which is not Newcomb's employer, with a kind of immunity that is designed for the protection of employers against suits by their employees.

The only way to claim that the casino firm should be able to take advantage of the construction firm's immunity is to say that, because Cal-Neva and Sundowner Casino have in common two partners, both firms enjoy statutory immunity. This does not make sense. The hotel firm and the construction firm do not become a unity because they have common partners. There is no reason why they should become a unity for the purpose of setting employers' immunity under NIIA.

In claiming that such a unity exists, in asserting that if Cal-Neva is immune, Sundowner must also be immune, the clients rely heavily on Watson v. G.C. Associates Ltd., 100 Nev. 586, 691 P.2d 417 (1984). In that case, even though general partners were dismissed as being immune statutory co-employees, the plaintiff tried to sue the partnership itself as an owner. We understandably refused to treat the partnership as such an entity independent from its immune partners as to be subject to suit when the partners themselves were not.

*Watson* is not much help to the clients in this case. Our holding in *Watson,* that a partnership made up of immune partners cannot be sued as an independent entity, does not address the issue here, namely, whether two different partnerships engaged in two different businesses will both be held immune just because one of the two partnerships is immune under the NIIA, and two of the partners in the immune partnership are also partners in a partnership that otherwise would not enjoy immunity.

---

[2]NRS 616.090(2) includes in the definition of "employer" "[e]very person [or] firm . . . which has in service any person under a contract of hire." The statutory definition of employer does not include the word partnership but we assume that the two partnerships involved in this case, Cal-Neva and Sundowner, can properly be characterized as "firms" who can act as employers under NIIA. We would note at this juncture that we have here two different firms, a construction firm and a hotel firm. Each is an employer with its own identity and with its different employees and different "contracts of hire." That these two firms should be considered as one, merely because they share common partners, does not appear to be a reasonable assumption.

It is true that in *Watson* we invoked the "aggregate" theory of partnership in refusing to let the partnership in that case be held independently liable, we certainly did not hold that a partnership may have under no circumstances and for no purposes an identity of its own. In Nevada a partnership can acquire and hold title to real property, NRS 87.080; a partnership is a legal entity for purposes of pleading and defending litigation, Richard Mathews, Jr., Inc. v. Vaugh, 91 Nev. 583, 540 P.2d 1062 (1975); a partnership is bound by a partner's wrongful act or omission done in the ordinary course of the partnership's business, NRS 87.130, but the partnership is not bound if the partner's wrongful act is not done in the course of the partnership's affairs, NRS 87.090; and a partnership may be an employer under the NIIA, NRS 616.090(2). *See* footnote 2, above. The attorneys maintain that since the Cal-Neva and Sundowner partnerships, "conducted totally different business enterprises, had separate employees and payrolls, maintained different business locations, and had separate workmen's compensation accounts with the State Industrial Insurance System" they should be treated as separate and distinct business entities in deciding the present case. We must agree.

Case law in other jurisdictions supports the position that multiple partnerships formed by common partners are separate and distinct business enterprises.[3] Certainly, if Sundowner and Cal-Neva were corporations rather than partnerships, there would be no question but that Sundowner would not have been immune in the Newcomb negligence case.

The purpose of employers' immunity under the NIIA is to allow an employer to provide workmen's compensation coverage in return for which *that particular employer's* liability is limited to the workmen's compensation benefits. Because the casino firm and the construction firm were each operated independently—each kept its own books, hired its own employees, had separate business premises, pursued different purposes and required a different business license—granting immunity to the casino firm in this case would not be consistent with the stated purpose of NIIA immunity.

Because an immunity defense was not available to the casino-owning firm, Sundowner Casino, the failure of the attorneys to interpose the immunity defense on behalf of the casino partner-

---

[3]Cases to this effect include the following: Michigan Employment Sec. Comm'n v. Crane, 54 N.W.2d 616 (Mich. 1952); Monson v. Arcand, 58 N.W.2d 753 (Minn. 1953); Toenberg v. Harvey, 49 N.W.2d 578 (Minn. 1951); Crall v. Hockman, 460 S.W.2d 668 (Mo. 1970); Billy v. Consolidated Machine Tool, 412 N.E.2d 934 (N.Y. 1980); Church Budget Envelope Co. v. Cornell, 136 N.E.2d 101 (Ohio 1955).

ship could not have caused monetary damage to the clients. Since there can be no causal relationship between the attorneys' not interposing the immunity defense and the damages claimed to be suffered by the clients, it is not necessary to consider whether or not the attorneys' conduct fell below the standard of care expected of attorneys in this state. The attorneys in this case were entitled to judgment as a matter of law; the summary judgment of the trial court, hence, will be affirmed.[4]

STEFFEN, A. C. J., MOWBRAY and ROSE, JJ., and ZENOFF, Sr. J., concur.

---

[4]THE HONORABLE CLIFF YOUNG, Chief Justice, has voluntarily disqualified himself from consideration of this case.

THE HONORABLE ROBERT E. ROSE, Justice, participated in the decision upon the briefs, record and recording of the oral argument.

THE HONORABLE DAVID ZENOFF, Senior Justice, participated in this appeal in the place of then CHIEF JUSTICE E. M. GUNDERSON, pursuant to this court's general order of assignment filed September 14, 1988.